O

JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSA CORTEZ AND DIANA ROBLES, California residents, individually, and on behalf of themselves, all others similarly situated, and on behalf of all aggrieved employees,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>ROSS DRESS FOR LESS, INC., a Virginia corporation,<br><br>　　　　　Defendant. | Case No. EDCV 13-01298 DDP (DTBx)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>[Dkt. No. 17.] |

　　　Before the court is Defendant Ross Dress for Less, Inc. ("Ross")'s Motion to Compel Arbitration. (Dkt. No. 17.) The Motion is fully briefed. Having considered the parties' submissions and heard oral argument, the court now adopts the following order.

///

///

///

**I.   Background**

On July 27, 2013, Plaintiffs Rosa Cortez ("Cortez") and Diana Robles ("Robles"), both former employees of Ross, brought this putative collective and class action lawsuit against Ross on behalf of themselves and other current and former Ross employees. (Dkt. No. 1) The Complaint alleges that Ross violated the Fair Labor Standards Act (FLSA) and various California wage and hour statutes by failing to pay them and their coworkers for all of their hours of work. (Id. ¶¶ 40-103.)

On October 21, 2013, Ross filed a motion to compel Plaintiffs to submit their claims to individual arbitration. (Dkt. No. 17.) In support of this motion, Ross submitted evidence that Cortez and Robles signed agreements in which they waived the right to pursue any employment-related claims under the FLSA and parallel state laws before a court or jury, and committed instead to submit any such claims to mediation or binding arbitration.

Specifically, Ross submitted forms signed by Cortez and Robles, dated July 30, 2007 and September 9, 2004 respectively, acknowledging receipt and agreeing to the terms of the "Ross Arbitration Policy" ("RAP"). (See Declaration of Daphne Broadnax in Support of Motion, Exs. R & P.) Plaintiffs have at no time disputed that the documents bear their signatures. According to Ross, the acknowledgment form was included in a Store Associates Handbook containing the RAP, which, until mid-2011, employees were asked to sign upon beginning their employment with the company. (See Broadnax Decl. ¶ 1-4, Exs. P & R.)

Additionally, Ross submitted records purportedly indicating that in 2011 both Cortez and Robles electronically signed a revised

2

version of the RAP, re-titled "Dispute Resolution Agreement" ("DRA"), through Ross's online "Learning Management System." (See Declaration of Emilie Couzzo in Support of Motion ¶ 1-15, Exs. A-O.) Ross submitted evidence showing that Cortez and Robles clicked "I agree" after being presented with the text of the DRA through the online program. (Id.)

The DRA provides that "disputes arising out of or related to [the employee's] employment with Ross or its termination" shall be "resolved by mediation or by final and binding arbitration and not by a court or jury." (Id. Ex. F.) The DRA also provides that "[t]here will ... be no right or authority for any dispute to be brought or arbitrated as a class or class action." (Id.) The RAP contains provisions that are substantively equivalent to the DRA, varying only in phrasing. (See Broadnax Decl. Exs. R & P.)

Ross asserts that the more recently signed DRA superseded the RAP and brings this Motion on the basis of the DRA. However, Ross contends that if the DRA is for any reason unenforceable, its Motion to Compel Arbitration should be granted on the basis of the earlier signed RAP. (See Motion at 2; Reply at 1-3.)

**II.  Legal Standard**

The Federal Arbitration Act ("FAA") reflects a "federal policy favoring arbitration agreements." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 25 (1991) (quoting Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)). Under the FAA, 9 U.S.C. § 1 et seq., a written agreement that controversies between the parties shall be settled by arbitration is "valid, irrevocable,

3

and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

A party aggrieved by the refusal of another to arbitrate under a written arbitration agreement may petition the court for an order directing that arbitration proceed as provided for in the agreement. 9 U.S.C. § 4; see e.g. Stirlen v. Supercuts, Inc., 51 Cal.App.4th 1519, 1526-27 (1997). In considering a motion to compel arbitration, the court must determine whether there is a duty to arbitrate the controversy, and "this determination necessarily requires the court to examine and, to a limited extent, construe the underlying agreement." Stirlen, 51 Cal.App.4th at 1527. The determination of the validity of an arbitration clause is solely a judicial function. Id. (internal citation omitted). If the court is satisfied that the making of the arbitration agreement or the failure to comply with the agreement is not at issue, the court shall order the parties to proceed to arbitration in accordance with the terms of the agreement. 9 U.S.C. § 3.

**III. Discussion**

**A.   Existence of a Valid Arbitration Agreement**

"[W]hen presented with a petition to compel arbitration the trial court's first task is to determine whether the parties have in fact agreed to arbitrate the dispute." Gorlach v. Sports Club Co., 209 Cal.App.4th 1497, 1505 (2012). The petitioning party bears the initial burden of proving by a preponderance of evidence (1) the existence of a valid arbitration agreement and (2) that the dispute is covered by the agreement. See Engalla v. Permanente Med. Grp., Inc., 15 Cal.4th 951, 972 (1997). "[T]he trial court sits as

4

a trier of fact, weighing all the affidavits, declarations, and other documentary evidence, as well as oral testimony received at the court's discretion, to reach a final determination." Id. at 972.

Here, there is no dispute that, if either the DRA or the RAP constitute valid contracts, the agreements cover the dispute at issue. Plaintiffs contend, however, that there is insufficient evidence to find that a valid contract exists. The court is unpersuaded.

First, contrary to Plaintiffs' contention otherwise, the evidence demonstrates that Plaintiffs agreed to enter into the DRA by electronic means. California's Uniform Electronic Transactions Act ("UETA") provides that "[w]hether the parties agree to conduct a transaction by electronic means is determined from the context and surrounding circumstances, including the parties' conduct." Cal. Civ. Code § 1633.5. Plaintiffs assert that employees did not receive adequate notice that they were entering into a binding agreement.(See Opposition at 7.) The argument is not convincing. The evidence shows that the software through which employees were asked to sign the DRA made explicitly clear, in understandable language, both before and after presenting the text of the DRA, that by clicking "I agree," the employees were entering into a binding agreement that disputes arising from their employment would be resolved by arbitration rather than by a court or jury.[1] (See

---

[1] For example, before presenting the text of the DRA, the program presented the following text:
  READ CAREFULLY THIS AGREEMENT AFFECTS YOUR RIGHTS.  Following for your review and signature is a copy of Ross's Dispute Resolution Agreement. You received a hard copy of this
(continued...)

5

Couzzo Decl. ¶ 7 & Exs. C, D.) These circumstances satisfy the requirements for the creation of a valid contract under § 1633.5.

Second, contrary to Plaintiffs' contention otherwise, Ross has presented sufficient evidence to show that Cortez and Robles electronically signed the DRA. Defendant submitted as exhibits print-outs of several pages generated by the "Learning Management System" software, including a "Learning Activity Progress Detail" page, "Training Transcript" page, and "Certificate of Achievement" page, indicating that Cortez and Robles electronically signed the DRA on July 2, 2011 and June 30, 2011, respectively. (See Couzzo Decl. ¶ 14 & Exs. J-O.) Plaintiffs contend that these exhibits are not sufficient to show that Cortez and Robles electronically signed the agreements because the website lacks adequate security protocols to ensure that someone other than Plaintiffs did not agree to the DRA on their behalf. (Opp. at 11-12.) The court is not convinced. The website appears to use reasonable security procedures, including a procedure by which first-time users may create a unique password to access the system. (See Declaration of Emilie Cuozzo in Support of Motion ¶¶ 4-6.) Given the evidence in the record, the court finds implausible any assertion that the

---

[1](...continued)
document with your 2011 Ross Store Associate Handbook.  Please read the attached agreement carefully.  By agreeing to its terms you and Ross are waiving your right to have disputes related to your employment heard by a jury are agreeing to have any disputed [sic] decided by an arbitrator instead.

Couzzo Decl. ¶ 7 & Exs. C, D.) Similar language making clear the legally binding nature of the agreement was presented to employees on a subsequent page following the presentation of the text of the DRA, including text stating that "By clicking on the 'I agree' button you are providing Ross Stores, Inc. with the equivalent of your written signature for legal purposes." (See id. ¶ 9 & Ex. G.)

6

signatures of Plaintiffs were electronically forged.

Plaintiffs assert that they do not recall having signed the DRA electronically and instead only recall being required to fill out an online survey. (See Declaration of Rosa Cortez in Support of Opposition ¶¶ 8-9; Declaration of Diana Robles in Support of Opposition ¶ 6.) While the court has taken Plaintiffs' assertions in this respect into account, a preponderance of the evidence supports the conclusion that Plaintiffs did electronically sign the DRA. See Rosas v. Macy's, 2012 WL 3656274 (C.D. Cal., Aug 24, 2012) (electronic signature enforceable under the UETA despite plaintiff's statement that she does not recall signing the document); Holmes v. Air Liquide., 2012 WL 267194 (S.D. Tex, Jan 30, 2012) (same); Buckhalter v. J.C. Penney Corp., 2012 WL 4468455 (D.C. Miss., Sept. 25, 2012) (same).

In any case, even if the DRA were not valid, there is no reasonable basis for dispute that the earlier RAP was validly signed by Plaintiffs. Indeed, Plaintiffs do not point to any deficiencies that might render the RAP invalid. Rather, Plaintiffs contend that Ross abandoned its effort to enforce the RAP. (Opp. at 2). However, this contention is not supported by the record. (See Declaration of Gregory D. Wolflick in Support of Reply Ex. 1 (letter to Plaintiffs' counsel dated August 14, 2013 enclosing RAP acknowledgement forms signed by Plaintiffs). The evidence is that Ross has pursued enforcement of the DRA only because it superseded the RAP, not because it concedes the latter is invalid. (See Motion at 1; Reply at 1.)

Third, Plaintiffs contend that there is insufficient evidence that "the DRA was either provided or actually received by the

Plaintiffs." (Opp. at 3.) This argument is likewise unsuccessful. Ross has presented credible declarations and exhibits establishing that Plaintiffs would have necessarily viewed the text of the DRA as part of Ross's Learning Management System before they could have electronically signed the agreement. (See Couzzo Decl. ¶ 8 & Exs. D-F.)

In sum, Ross has met its burden to show that Plaintiffs entered into valid arbitration agreements with Ross covering the dispute at issue.

**B.    Unconscionability**

Plaintiffs contend that, even if they did sign the agreements, the agreements are unconscionable under California contract law and are therefore unenforceable on the ground that they are contracts of adhesion and are unreasonably one-sided. (See Opp. at 15-22.)

California recognizes an unconscionability defense for arbitration agreements. "One common formulation of unconscionability is that it refers to an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party. As that formulation implicitly recognizes, the doctrine of unconscionability has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." Sonic-Calabasas A., Inc. v. Moreno, 57 Cal.4th 1109, 1133 (2013). See also Chavarria v. Ralphs Grocery Co., 733 F.3d 916, 922 (9th Cir. 2013). While both procedural and substantive unconscionability must be present for a contract to be declared unenforceable, they

need not be present to the same degree. See Harper v. Ultimo, 113 Cal. App. 4th 1402, 1406 (2003).

The agreement at issue here cannot be set aside on the grounds of unconscionability. Even if the DRA is procedurally unconscionable because it is a contract of adhesion, see Ting v. AT&T, 319 F.3d 1126, 1148 (9th Cir. 2003) (citing Armendariz, 6 P.3d at 745); Flores v. Transamerica Homefirst, Inc., 93 Cal.App.4th 846 (2001), there is no basis to conclude that the DRA is substantively unconscionable. The agreement does not include any of the sorts of unfairly one-sided terms that have been the basis for findings that an arbitration agreement is substantively unconscionable. See, e.g., Chavarria v. Ralphs Grocery Co., 733 F.3d 916, 926 (9th Cir. 2013) (affirming this court's finding that unfairly one-sided terms in employment arbitration agreement rendered agreement substantively unconscionable). The absence of features rendering the agreement substantively unconscionable precludes a finding that the agreement is unenforceable.

## IV. Conclusion

For the reasons set forth herein, the court GRANTS Defendant's Motion to Compel Arbitration. If Plaintiffs wish to pursue their claims, they must do so in accordance with the terms of the Dispute Resolution Agreement.

IT IS SO ORDERED.

Dated: April 10, 2014

DEAN D. PREGERSON
United States District Judge